F. A. MENZIES *vs.* VINCENT KING.

APRIL 10, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This petition was brought by an employer to review a preliminary agreement under the workmen's compensation act, general laws 1938, chapter 300. After a

hearing *de novo* in the superior court a decree was entered granting the petition on the ground that the employee's incapacity had ended. From that decree the employee has duly prosecuted an appeal to this court.

It appears in evidence that Vincent King, the employee, was injured on August 7, 1951 while pulling a baggage truck loaded with nuts and bolts in the course of his employment by petitioner, F. A. Menzies. A preliminary agreement was entered into between the parties on August 17 and was approved by the director of labor September 6, 1951. The nature and location of the injury as therein set forth is "Bilateral hernia." Under that agreement the employee received compensation for total incapacity in the sum of $28 per week based on an average weekly wage of $66. It further appears that Dr. William P. Davis operated upon the employee for bilateral inguinal herniae on August 9, 1951, after which the employee remained in the hospital for fifteen days. Postoperative medical attention was given by Dr. Davis until October 1, 1951 and since that time no such medical care has been necessary or sought by the employee.

Subsequent to the filing of the instant petition for a review of the preliminary agreement the employee was examined April 15, 1952 by Dr. Joseph C. Johnston, who was the only medical witness at the hearing. According to his testimony, both herniae were fully healed and there was no need of any medical attention "for those hernias" at the time of his examination. He further testified: "There was no evidence of any weakness of the abdominal walls in the operative regions or elsewhere."

In that general connection the doctor testified that the employee had told him he was employed as a laborer pulling a baggage truck when he was injured. To a question calling for his opinion on the employee's ability to return to his regular work the doctor stated substantially that the herniae had completely healed and since nine months from the operation had intervened there was nothing to prevent

him from doing the work referred to. He also added that he could do some shoveling.

The employee testified that he had been hired by the employer about three weeks before the accident; that his job at the time of the injury was "pulling a baggage truck" in helping to move equipment of the Rhode Island Tool Company from one building to another; and that occasionally he did some shoveling but it was light work such as laying some gravel on the road. He admitted also that he had been working on and off between December 1951 and April 1952 as a counterman in a diner where he was paid at the rate of $35 per week.

The employee further testified as follows: "Q. Well, are you under the treatment of any doctor for the hernia condition at the present time, Mr. King? A. No, I am not. Q. You are not. Isn't it fair to say that you have recovered from the effects of the hernia injury? Just talking about the hernia now. A. Well, I guess so. Yes."

The testimony of the employer corroborated that of Dr. Johnston and the employee concerning the nature of the regular work which he was performing at the time he was injured. None of such evidence described his job as "pick and shovel" work. According to the uncontradicted testimony of the employer the regular work of the employee, since his hiring about three weeks before the accident, was chiefly pulling a baggage truck in helping to move nuts, bolts and equipment from one building to another, and at the time of his injury he was pulling such a truck which had been loaded by two other employees. He also testified that a job of similar nature was open to the employee so long as he had clearance from the union in accordance with the practice previously established between the employer and the union and in operation when the employee was hired.

The employee's reasons of appeal are substantially that the decree is contrary to the law, the evidence, and the weight thereof, and that the trial justice erred in excluding

over objection two questions hereinafter quoted which were asked of Dr. Johnston in the course of his cross-examination. The doctor was first asked: "Did he [employee] also tell you that his general work was pick and shovel?" To this he replied: "He did not say that, no." Then followed the questions objected to which read:

"Q. He did not say that. Now, would you recommend that Mr. King—would he, following your recommendation, be expected to work with a pick and shovel either at the Narragansett Electric Company or—at the Gulf Oil Company, you said?

A. Texas.

Q. —Texas?

Mr. Reynolds: I object to the form of the question. I don't think the doctor—

The Court: I will sustain the objection.

Mr. McKiernan: May I have an exception, Your Honor?

The Court: Exception may be noted.

Respondent's exception noted.

Q. Doctor, would you recommend him, Mr. King, as an employee, to the Narragansett Electric Company if he came into your office for examination and after you examined him, basing your conclusion completely upon the nature and the healing of the hernia, Doctor, would you recommend him as an employee or future employee to the Narragansett Electric Company?

Mr. Reynolds: I object, Your Honor.

The Court: I think I must sustain the objection. There may be different standards for different companies, I do not know, and this gentleman is a very light man physically and it is quite possible some companies for that reason, even though he was perfectly well, would feel that he wasn't heavy enough to employ to do certain things. We will get into difficulties if we attempt to go into the standards of different companies. I will therefore sustain the objection and note your exception.

Respondent's exception noted."

The employee contends that he had a right through these questions to impeach the doctor's previous testimony as to the present capacity of the employee to return to his regular work, and that the trial justice in disallowing such questions assumed without evidence that the companies referred to might not hire the employee for some reason other than his capacity to work.

In our judgment the questions were properly disallowed. The first question objected to referred solely to a "pick and shovel" job with other companies, whereas the uncontradicted testimony of all the witnesses, including the employee, showed that he was not so engaged. His regular work in the instant case was chiefly pulling a baggage truck, and admittedly any shoveling was light and only occasionally performed. The second question is open to similar criticism. It either contemplated the same "pick and shovel" job, which was referred to in the previous question, or it could include any number of different jobs which might be heavier than the employee was performing in his regular work.

The inquiries in their present form would have introduced collateral issues because, as indicated by the trial justice, those other companies might well have different standards for similar work or for other types of work which would not be helpful in determining whether the employee had the present bodily health and physical capacity to perform his regular work with this employer. At any rate if the questions generally were admissible to test the doctor's opinion testimony they should have been directed to the same or similar type of work and also should have been conditioned on the assumption that other companies had such jobs to be performed. Moreover the purpose of the questioning admittedly was to test the value of the doctor's opinion, and in view of the employee's admission about his recovery and the doctor's uncontradicted testimony concerning employee's ability to return to his regular work,

we cannot see any prejudicial error resulting from the exclusion of these questions.

The employee also appears to contend by his reasons of appeal that the decree was contrary to the law, the evidence, and the weight thereof. Obviously in this proceeding we are not concerned with the weight of the evidence. As indicated previously, the employee apparently premises his argument largely on the assumption that his regular employment was "pick and shovel" work. But the only reference thereto in the evidence related to what was performed by him about a year previously under another employment. It had no connection with the work which he was hired to perform and was performing at the time of his injury in the instant case.

In our opinion the admissions of the employee and the testimony of the doctor to the effect that the herniae had completely healed, and the doctor's testimony that the employee could return to the kind of work which he had said he was performing when he was injured, make it clear that there is evidence to support the trial justice's findings of fact which are therefore conclusive.

We are of the opinion that the employee's argument concerning the part of the decree permitting suspension of compensation ignores the fact that such order is based upon the finding that his incapacity had ended. Mere suspension in the circumstances cannot possibly prejudice the employee. It appears to be more in keeping with his right to have the decree reviewed at some future time if his condition changes so as to incapacitate him and such condition is causally related to the injury described in the preliminary agreement.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court.

*Francis V. Reynolds*, for petitioner.

*McKiernan, McElroy & Going, John S. McKiernan*, for respondent.